IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EDWINA M. WALKER, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 06-0668-CV-W-ODS-SSA |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| Commissioner of Social Security, ) | |
|     Defendant. ) | |

ORDER AND OPINION AFFIRMING FINAL DECISION
OF COMMISSIONER OF SOCIAL SECURITY

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income benefits. For the following reasons, the Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in 1968 and has completed one year of college. Between 1990 and 2004, Plaintiff held approximately 64 positions, most of which lasted one day or less. R. at 233-39. Plaintiff alleged she became disabled on November 15, 2003, due to multiple chemical sensitivity. Since the alleged date of onset, Plaintiff has held positions as a medical assistant, lab processor and a temporary seasonal worker. R. at 233. At the time of the hearing, she was employed as a part-time cashier for Dillon's Grocery Store.

In 1996, Plaintiff was working as a machine operator for Sika Chemical Plant when two serious explosions occurred at the plant. R. at 47. Plaintiff was denied Worker's Compensation, but received short term disability. R. at 48. On May 30, 1996,

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and should, therefore, be substituted for Commissioner Jo Anne B. Barnhart or Acting Commissioner Linda S. McMahon as Defendant in this action. 42 U.S.C. § 405(g); Fed. R. Civ. P.25(d)(1).

1

Dr. Henry Kanarek sent a letter to Cigna Disability Management Program, stating he had examined Plaintiff on three separate occasions. R. at 173. Dr. Kanarek stated Plaintiff complained of shortness of breath, recurrent sinus infections, headaches, post nasal drainage, low grade fevers, and lymphadenopathy. R. at 173. He diagnosed Plaintiff with "multiple chemical sensitivity" with no allergies contributing to the problem, no asthma, and possible increase in bronchial airway reactivity due to chronic exposure to irritating substances. He stated she had only a minimal sensitivity to dust mites, and tests were negative to trees, grasses, weeds, molds, cockroach, cats and dogs. Dr. Kanarek stated Plaintiff was disabled, but could return to work if she avoided exposure to chemicals. R. at 258-9.

On June 5, 1997, Plaintiff met with Dr. Suzanne Shaffer, complaining of intermittent swelling and pedal edema. At the time of the examination, she had no edema, explaining she had elevated her legs the previous day. R. at 174. Dr. Shaffer recommended a CT of the pelvic region to rule out an obstructive process which might increase her symptomology. The Record does not reflect whether the CT actually took place. However, Dr. Shaffer agreed with Dr. Kanarek that Plaintiff should avoid working in an area with chemicals, strong odors or dust. R. at 175.

Plaintiff was treated by Dr. Diane Voss, complaining of nasal congestion, pain and swelling of the legs. R. at 197. The record reflects Dr. Voss' office had difficulty dealing with Plaintiff, noting she cancelled several appointments, failed to show up for others and refused to make appointments, requesting medication instead. R. at 177-189. Plaintiff appeared depressed, suffered from headaches, peripheral edema and allergic rhinitis. R. at 197. During an October 2002 follow-up appointment, Dr. Voss noted Plaintiff reported feeling better overall, her sleeping was good overall, and she had some increased stress with work. R. at 190.

On December 18, 2002, Dr. Sherry Ryan determined Plaintiff had abnormal evening cortisol levels, hypertension, Acanthosis Nigricans[2], goiter, multiple drug

---

[2]A disorder which causes velvety, light-brown-to-black markings, usually on the neck, under the arms or in the groin. It is most often associated with obesity.
http://www.aocd.org/skin/dermatologic_diseases/acanthosis_nigrica.html

2

sensitivity syndrome and possible tinea corpora[3] related to the use of gloves at work. R. at 256. At the time of the examination, Plaintiff's medications included Axid, Allegra, Spironolactone/Hydrochloraothiazide, Furosemide, Klor-Consideration, Azmacort, Amitriptyline and eleven various medications taken for "flare-ups." R. at 255.

On December 28, 2003, Plaintiff presented to the emergency department of Menorah Medical Center. R. at 177. Plaintiff stated she was "exposed to some chemicals, some fumes from a car" approximately four days prior to the visit and needed something for the pain. R. at 211. However, Plaintiff had no complaints of fever, chills, difficulty breathing, swelling of the mouth, chest pain, racing heart, nausea, vomiting or diarrhea. R. at 211. A chest x-ray revealed no evidence of a chemical reaction. The doctor diagnosed Plaintiff with "questionable chemical exposure." R. at 212.

Dr. Elliot Franks examined Plaintiff on a consultive basis on August 31, 2004. R. at 214-215. Dr. Franks observed a well-developed female, in no acute distress. She was hostile because "she does not like being in a doctor's office," and refused to let Dr. Franks take her vital signs. He noted her hair was permed and processed. R. at 215. Plaintiff informed Dr. Franks she is allergic to "almost all airborne particles," however, testing showed only "minimal sensitivity to dust mite of the farinae type." R. at 214. Dr. Franks was unable to determine if Plaintiff was afflicted with multiple chemical sensitivity syndrome. He felt she probably does have multiple allergies, but that her examination proved to be entirely normal. R. at 215.

A hearing was held on September 28, 2005 in front of Administrative Law Judge Breton. R. at 35. At the time of the hearing, Plaintiff was employed with Dillon's Grocery store as a cashier, working fourteen hours a week. However, Plaintiff had been working full time, 40-hour weeks, for the first month of training R. at 37-38. She stated that even at her current position, she has problems with food, canned items and plastics, which cause migraine headaches and "sometimes regurgitation." R. at 39. Plaintiff testified when she walks into a room, she can smell "whoever has something on" and it causes a

---

[3]A condition also known as Ringworm. http://dermatology.about.com/cs/fungalinfections/a/ringworm.htm

3

Case 4:06-cv-00668-ODS   Document 11   Filed 08/02/07   Page 3 of 8

reaction. R. at 52. She further testified that office equipment such as fax machines and paper shredders caused a reaction. R. at 54. Plaintiff stated that as recent as a visit to her attorney's office she started coughing, sneezing and wheezing when her attorney started making copies, "the formaldehyde, I could smell the fumes from it . . . and it gave me a migraine." R. at 55. Depending on the item, Plaintiff states she needs to lay down for up to three days. R. at 56. She also relies on PO3 oxygen tank to "stop regurgitation and nauseation." R. at 56.

Plaintiff testified that between February 2004 and September 2004, she had several visits with Dr. Willoughby, who was experimenting with "provocative testing," but had to discontinue her visits as they became too expensive. R. at 58. She also contradicts Dr. Franks' statement that she perms and colors her hair, stating she has decent hair and the last time she processed her hair was around 1996. R. at 63. Plaintiff testified she can get sick from gloves, food, clothes, riding in a car, someone's home, church, or even outdoors. R. at 65. She stated she has two air purifiers in her home, had her carpet treated with allergenic chemicals, and purchased bedding, detergents and dishwashing liquids from an environmental catalogue. R. at 67. She currently lives with her parents, who have had to adjust their lifestyles to accommodate her health issues. Her mother no longer keeps floral arrangements in the home, and her father no longer takes the daily newspaper or is able to fish. R. at 67. She further stated she is on a restrictive, rotating diet. For instance, if she has a potato on Monday, she cannot have one again until Thursday because it is "overload" and can cause nausea. R. at 68.

Vocational Expert Richard Sherman testified Plaintiff's past relevant work was a medical assistant which included work as a phlebotomist and machine operator, both semi-skilled and performed at the light exertional level. R. at 72. The ALJ asked the VE to assume an individual of the same age, educational background and past work experience as Plaintiff, with no exertional limitations and would need a clean, sterile environment. The VE responded Plaintiff could not perform her past relevant work and could not perform any other jobs. R. at 72-73. Next, the ALJ asked the VE to assume an individual who would be precluded from concentrated work exposure to fumes, dust, smoke, and gases, and all work exposure to chemicals. The VE determined the

4

individual could perform work, such as an officer helper, office manager or mail clerk. Finally, the ALJ asked the VE to assume the same limitations, but such an individual would have to miss approximately four days of work a month. The VE concluded such individual would not be able to perform the previously identified jobs or any other jobs. R. at 74.

The ALJ noted that records from Dr. Maslan, Dr. Sokol and Dr. Pitts were not proffered as evidence in this case, but most likely would not have assisted the claimant in proving she is disabled since notes regarding such records indicate all test results were normal. R. at 21. Despite many temporary jobs, the ALJ determined Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. Based upon the requirements in the Regulations, Plaintiff's chemical sensitivity is a "severe" impairment, but does not meet or equal one of the listed impairments found in 20 CFR, Part 404, Subpart P, Appendix 1. He further found Plaintiff's limitations are not totally credible. R. at 30. Plaintiff could frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds, stand and/or walk for six hours in an eight hour day, sit for six hours in an eight hour workday, has good use of her hands and fingers to be able to perform duties that involved fine and gross manipulation, should avoid all concentrated exposure to fumes, dust, smoke, chemicals, and gases, and can perform basic work-related activities at light exertion on a regular basis. R. at 31.

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v.

5

Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

A. Credibility

Plaintiff faults the ALJ in discounting Plaintiff's credibility and ignoring a letter written by Plaintiff's mother corroborating her testimony. The familiar standard for analyzing a claimant's subjective complaints is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>    1. The claimant's daily activities;
>    2. the duration, frequency and intensity of the pain
>    3. precipitating and aggravating factors;
>    4. dosage, effectiveness and side effects of medication;
>    5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

As the ALJ noted, none of Plaintiff's physicians told her to limit her activities, she has not received any recent medical attention and is currently working in a public environment. R. at 28, 31. Dr. Kanarek stated Plaintiff was disabled, but could return to work if she avoided exposure to chemicals. Plaintiff repeatedly claimed to be allergic to virtually everything, yet even Dr. Kanarek's testing revealed a minimal sensitivity to dust mites, and tests were negative to common allergies such as trees, grasses, weeds, molds, cockroach, cats and dogs. R. at 258-9. Dr. Franks stated "Ms. Walker professes to have 'multiple chemical sensitivity syndrome,' a syndrome which may or may not exist." R. at 215. Moreover, the ALJ determined claimant's continued work activity beyond the alleged onset date indicates her ability to be exposed to various environmental triggers and work in a public setting. R. at 26. Beyond Plaintiff's own testimony, there is nothing to confirm her severe claims of disability.

Plaintiff further claims the ALJ erred by discounting a written statement from her mother. Plaintiff's mother submitted a letter restating Plaintiff's claims that she cannot indulge in many activities because of her multiple chemical sensitivities. R. at 244. Plaintiff lives with her parents and her lifestyle clearly affects their living situation. The ALJ is not required to exhaustively discuss corroborating testimony of an interested lay witness where their statements are contradicted by the same evidence what contradicts Plaintiff's testimony. Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995). The Record contains substantial evidence supporting the ALJ's determination and assessment of Plaintiff's credibility.

B. Residual Functional Capacity

Plaintiff also argues the ALJ erred based upon improper hypothetical questions posed to the VE. The ALJ should determine a claimant's residual functional capacity based on all of the relevant evidence. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). After discounting much of Plaintiff's subjective complaints of limitations, the ALJ assessed Plaintiff could frequently lift and carry 10 pounds, occasionally lift and carry 20

7

pounds, stand and/or walk for six hours in an eight hour day, sit for six hours in an eight hour workday, has good use of her hands and fingers to be able to perform duties that involved fine and gross manipulation, should avoid all concentrated exposure to fumes, dust, smoke, chemicals, and gases, and can perform basic work-related activities at light exertion on a regular basis. R. at 31. He then posed those limitations in a hypothetical to the VE, who opined Plaintiff could perform work found in the national economy. R. at 31. Based upon the Record as a whole, the ALJ's proper exclusion of Plaintiff's subjective complaints and testimony of the VE, the ALJ did not err in finding Plaintiff retained the ability to perform work in a significant number of jobs in the national economy.

## III.  CONCLUSION

For these reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

                                        /s/ Ortrie D. Smith
                                        ORTRIE D. SMITH, JUDGE
DATE: August 2, 2007                UNITED STATES DISTRICT COURT

8

Case 4:06-cv-00668-ODS   Document 11   Filed 08/02/07   Page 8 of 8